**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DERRICK BROOKS,

                              Plaintiff,

            - v -                                           Civ. No. 9:09-CV-743
                                                                    (GLS/RFT)

THE STATE OF NEW YORK; OFFICE OF MENTAL HEALTH,
*New York State*; MICHAEL HOGAN, *Commissioner, OMH*;
CNY PSYCHIATRIC CENTER; DONALD SAWYER, *Executive Director*,
CNYPC; DR. TERRI MAXMILLIAN, *Director SOTP, CNYPC*;
CHARMINE BILL, *Treatment Team Leader Ward 304*; JEFF NOWICKI,
*Chief Mental Health TRM, Serv*; LINDA KOVICH, *RN, Treatment Team Leader*,

                              Defendants.

**APPEARANCES:**                          **OF COUNSEL:**

DERRICK BROOKS
Plaintiff, *Pro se*
#172543
Central New York Psychiatric Center
P.O. Box 300
Marcy, NY 13403

HON. ANDREW M. CUOMO                      MEGAN M. BROWN, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

                    <u>**REPORT-RECOMMENDATION and ORDER**</u>

            *Pro se* Plaintiff Derrick Brooks brings this civil rights action, pursuant to 42 U.S.C. § 1983,

alleging that his constitutional rights were violated when he was strip-searched at the Central New

York Psychiatric Center ("CNYPC"), where he currently resides.  Dkt. No. 1, Compl.  Presently

before the Court is Defendants' Motion to Dismiss the Complaint pursuant to FED. R. CIV. P. 12(b)(6). Dkt. Nos. 20-21. Plaintiff opposes the Motion. Dkt. No. 23. For the reasons that follow, it is recommended that Defendants' Motion be **granted in part** and **denied in part**.

## I. BACKGROUND

In accordance with the applicable standard to be applied when considering a motion to dismiss under FED. R. CIV. P. 12(b)(6), we accept the factual allegations raised in the Complaint as true for the purposes of addressing this Motion. *See infra* Part II.A.

At approximately 12:30 p.m. on February 2, 2009, Plaintiff and other residents of Ward 304 at CNYCP were finishing their lunch in the dining room when they were informed by CNYCP staff members that before they could return to the day room, they were to be strip searched. Compl. at p. 5. Thirteen residents, Plaintiff included, withheld their consent to be strip searched and asked to speak with someone of authority about the issue. *Id.* at p. 6. Shortly thereafter, Defendants Charmine Bill, Unit 204's Treatment Team Leader, and Dr. Terri Maxymillian, Director of the Sex Offender Treatment Program ("SOTP") at CNYPC, came to the dining room and ordered Plaintiff and the others to participate in the strip search, threatening to call the New York State Police to forcibly conduct the strip searches if their consent was not forthcoming. *Id.* Maxymillian and Bill also stated that if the residents refused to participate, they would call their respective parole officers and have them violated for refusing to submit to a strip search. *Id.* When the residents asked why the searches were necessary, Dr. Maxymillian stated that the CNYCP administration had reasonable cause to believe that one of the residents had in his possession a controlled substance. *Id.* Based on Maxymillian's and Bill's threats, Plaintiff decided to cooperate and underwent the strip search.

After the strip search, Plaintiff was led to the day room where he remained until

approximately 4:30 p.m., when he was moved to Ward 404. *Id.* at p. 7. From the moment he arrived at Ward 404, Plaintiff was subjected to verbal harassment, threats, and false accusations by several CNYCP staff members who are not named as Defendants in this action.[1]

Plaintiff took steps to inform the following persons and offices of these alleged incidents: Mental Hygiene Legal Services, the New York Civil Liberties Union, New York State Department of Health and Human Services, New York State Office of the Inspector General, New York State Secretary of Health and Human Services, New York State Governor's Office, New York State Office of Mental Health Customer Relations Office, and Bruce E. Feig, Executive Deputy Commissioner of the Office of Mental Health. *Id.* at p. 9.

## II. DISCUSSION

### A. Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing

---

[1] The names of these non-defendant staff members are Ryan P. Brennan, Anthony T. Fabbio, Tara C. Baker, Gerardo R. Retamor, Kenneth H. Johnson, Latonya C. Williams, Michael G. Spadafora, Nicholas S. Guglielmo, Mary M. Burdick, and Jason Searcy.

*Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)).  Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion."  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (emphasis added).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008).  Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009).  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, __ U.S. __ ,129 S.Ct. at 1950 (citing *Twombly*).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1949.  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged or that the defendants have violated the . . . laws in ways that have not been

alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).  The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1950-51.

### B.  Personal Involvement

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted).  Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted).  Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1948.

Nevertheless, if a plaintiff seeks to bring a § 1983 action for supervisory liability, liability on the part of the supervisor may exist

> in one or more of the following ways: 1) actual direct participation in the constitutional violation, 2) failure to remedy a wrong after being informed through a report or appeal, 3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, 4) grossly negligent supervision of subordinates who committed a violation, or 5) failure to act on information indicating that unconstitutional acts were occurring.

*Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003) (citing *Colon v. Coughlin*, 58 F.3d at 873) (further citations omitted).

In this case, Defendants Michael Hogan, Donald Sawyer, Jeff Nowicki and Linda Kovich

-5-

move for dismissal based on a lack of personal involvement.  Dkt. No. 21, Defs.' Mot. at p. 5.  With respect to Sawyer, Executive Director of CNYPC, Plaintiff alleges in his Complaint that he sent Sawyer a letter complaining about the incident that was never responded to.  Compl. at p. 4.  In his Complaint, Plaintiff offers absolutely no factual allegations to support the personal involvement of Defendants Hogan, Nowicki, or Kovich.  *See generally* Compl.  However, in his Response in Opposition to Defendants' Motion, Plaintiff alleges that he notified OMH Commissioner Hogan of the incident through letters, none of which were replied to.  Dkt. No. 23, Pl.'s Resp. at p. 2.  Plaintiff also alleges in his Response that Hogan, Sawyer, and Nowicki gave Maxymillian approval to proceed with the strip searches, and that Defendant Kovich came to Ward 304 to assist Charmine Bill in supervising the searches once they commenced.  *Id.* at p. 3.  Thus, liberally construing the facts alleged in his Complaint and Response, Plaintiff contends that Defendants Hogan, Sawyer, and Nowicki were aware of the alleged strip search, allowed it to proceed, and failed to provide a remedy after receiving Plaintiff's petitions.  The combination of these allegations, while thin, is sufficient at this stage of the litigation to state a claim of personal involvement based on supervisory liability on the part of Defendants Hogan, Sawyer, and Nowicki.  Therefore, it is recommended that Plaintiff be given the opportunity to amend his Complaint in order to add to his Complaint factual allegations concerning the personal involvement of Hogan and Nowicki.

As per Defendant Kovich, Plaintiff fails to allege how she participated in the alleged search.  Beyond his conclusory statement that Kovich "assist[ed] defendant Charmine Bill in supervising said action," Pl.'s Resp. at p. 3, there is no indication that Kovich violated any resident's constitutional rights nor that she was a supervisor who allowed others to do so.  As such, it is recommended that Defendant Kovich be **dismissed** from this action for lack of personal

involvement.

### C.  Fourth Amendment

The Fourth Amendment to the Constitution states that "[t]he right of the people to be secure in their persons against unreasonable searches and seizures, shall not be violated . . . ."  U.S. Const. amend. IV.  As CNYPC is a government-run psychiatric center, its staff members are government actors subject to the Fourth Amendment.  *New Jersey v. T.L.O.*, 469 U.S. 325, 335 (1985).

Courts have recognized that institutionalized persons do not "check their constitutional rights at the door." *Aiken v. Nixon*, 236 F. Supp. 2d 211, 233 (N.D.N.Y. 2002) (cited in *Groves v. New York*, 2010 WL 1257858, at *5 (N.D.N.Y. Mar. 1, 2010)).  However, neither do civilly committed persons maintain the same reasonable expectation of privacy as other non-committed citizens.  As the Supreme Court noted in the prison context, "[l]oss of . . . privacy [is an] inherent incident [] of confinement[.]"  *Bell v. Wolfish*, 441 U.S. 520, 537 (1979); *Aiken*, 236 F. Supp. 2d at 233 (finding that institutionalized persons have a "diminished" expectation of privacy "below that of the public in society generally").  Courts in this Circuit have recognized civil confinement as a "special circumstance" that removes the warrant and probable cause requirements that normally apply to all government searches under the Fourth Amendment in lieu of the more elastic "reasonableness" test. *See Aiken v. Nixon*, 236 F. Supp. 2d at 231 (citing *Ferguson v. City of Charleston*, 532 U.S. 67, 79 (2001) for the proposition that in "special needs" cases, warrantless searches are permitted if they are reasonable under the circumstances); *see also Groves v. New York*, 2010 WL 1257858, at *5 (noting that a civilly confined person's privacy expectation must be balanced against societal interests). As the Supreme Court noted in *Bell v. Wolfish*,

> [t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case, it requires a balancing of the need

for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

441 U.S. at 559 (citations omitted).

In this case, Plaintiff alleges that he and other inmates were forced to consent to strip searches against their will because of the direct threats of Defendants Bill and Maxymillian. Plaintiff asserts that upon questioning Dr. Maxymillian, Maxymillian stated that the CNYCP administration had reasonable cause to believe that one of the residents had in his possession a controlled substance. Despite Defendants' assertions to the contrary, Plaintiff does not concede that reasonable suspicion existed for the searches, just that Maxymillian said it did. Nor does Plaintiff admit that the search he endured was reasonable under the Fourth Amendment; his entire Complaint stands for the opposite proposition.

Therefore, we find that Plaintiff has stated a facially plausible Fourth Amendment claim and recommend **against dismissal** of such claim at this juncture.[2]

### D.  False Accusations/Harassments

Plaintiff claims that after the alleged search was conducted, he was brought to Ward 304 where various persons, none of whom are named as Defendants, subjected him to false accusations and other harassments. Even assuming Plaintiff had alleged personal involvement on the part on any named Defendant, these claims would still fail because false accusations and harassment are not enough to bring a valid cause of action under § 1983. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) for the proposition that

---

[2] For the same reasons, we cannot, at this juncture, find that Defendants are entitled to qualified immunity. *See, e.g., Aiken v. Nixon*, 236 F. Supp. 2d at 237 (denying qualified immunity when it was unclear whether the search of civilly confined plaintiff was objectively reasonable) (citing *Martinez v. Simonetti*, 202 F.3d 625, 633 (2d Cir. 2000)).

there is "no general constitutional right to be free from being falsely accused" ); *Gill v. Riddick*, 2005 WL 755745, at *7 (N.D.N.Y. Mar. 31, 2005) (same); *see also Gill v. Hoadley*, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003) (citing *Alnutt v. Cleary*, 913 F. Supp. 160, 165-66 (W.D.N.Y. 1996) for the proposition that "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse.").

To the extent Plaintiff claims in his Response that such harassments were undertaken in retaliation for his initial refusal to undergo the strip search on February 2, 2009, such claim is conclusory as Plaintiff does not allege what connection any of the alleged persons who harassed him had to the strip search, nor why they would be motivated to retaliate against him given that he submitted to the strip search.

Therefore, it is recommended that these claims be **dismissed**.

### E.  Eleventh Amendment

The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  Although by its terms, the Amendment bars suit by citizens of one state against another state, the Supreme Court has held that such amendment similarly bars suits against a state by its own citizens.  *Hans v. Louisiana*, 134 U.S. 1 (1890).  "The Eleventh Amendment thus 'affirm[s] that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.'"  *Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 447-48 (2d Cir. 1999) (*citing Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984))).  Thus, sovereign immunity provided for in the Eleventh Amendment prohibits suits against the state, including a state agency, in federal court.  *Pennhurst,* 465 U.S. at 98; *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993);

*Daisernia v. State of New York*, 582 F. Supp. 792 (N.D.N.Y. 1984).  To the extent a state official is sued for damages in his or her official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state." *Rourke v. New York State Dep't. of Corr. Servs.*, 915 F. Supp. 525, 539 (N.D.N.Y. 1995) (citing *Berman Enters., Inc. v. Jorling,* 3 F.3d 602, 606 (2d Cir.), *cert. denied,* 510 U.S. 1073 (1994); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993)); *see also Mathie v. Fries*, 121 F.3d 808, 818 (2d Cir. 1997) ("A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer . . . .").

In this case, Plaintiff brings suit against the State of New York, OMH, CNYPC, and Commissioner Hogan in his official capacity. The Eleventh Amendment bars Plaintiff's claims for compensatory damages against these Defendants and, therefore, such claims should be **dismissed**. However, the Eleventh Amendment does not necessarily bar suits for injunctive and declaratory relief.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Here, Plaintiff asks for "an injunction compelling defendant to stop verbally harassing and threatening the plaintiff . . . [and t]o stop making false and incriminating comments concerning the plaintiff in [his] file, which could be used to cause disfavorable decisions in his pending Article 10 hearing/trial."  Compl. at p. 11. Plaintiff's request for prospective injunctive relief are based entirely on his allegations of harassment and false reports.  Because we have recommended that such claims be dismissed as facially invalid, Plaintiff's connected request for injunctive relief should also be **denied**.

Plaintiff also requests "an order declaring that [] the defendants have acted in violation of the [U]nited [S]tates [Constitution]."  *Id.*  The Second Circuit has held that claims for retrospective declaratory relief, such as those made by Plaintiff, are barred by the Eleventh Amendment.  *Ward*

*-10-*

*v. Thomas*, 207 F.3d 114, 119-20 (2d Cir. 2000) ("[A] declaratory judgment is not available when the result would be a partial end run around the Eleventh Amendment's bar on retrospective awards of monetary relief" (internal quotations marks and citations omitted)).

Therefore, Plaintiff's claims for compensatory, declaratory, and injunctive relief against Commissioner Hogan in his official capacity, the State of New York, OMH, and CNYPC should be **dismissed**.  However, Plaintiff's claims against Defendant Hogan in his individual capacity are not subject to dismissal pursuant to the Eleventh Amendment.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendants' Motion to Dismiss (Dkt. No. 21) be **GRANTED in part** and **DENIED in part** in accordance with the above opinion; and it is further

**RECOMMENDED**, that Defendants New York State, OMH, and CNYPC be **DISMISSED** from this action; and it is further

**RECOMMENDED**, that should the District Court accept the above recommendations, that Plaintiff be ordered to submit an amended complaint adding factual allegations, as reflected in his Response (Dkt. No. 23), concerning the personal involvement of Defendants Hogan and Nowicki **within thirty (30) days** of the District Court's ruling on this Report-Recommendation; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL**

**PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. §

636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).


Date:   August 11, 2010
         Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge