**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**DERRICK BROOKS**,

                        Plaintiff,

    - v -                                          Civ. No. 9:09-CV-00743
                                                                   (GLS/RFT)

**MICHAEL HOGAN**, *Commissioner, O.M.H.*, **DONALD SAWYER**, *Executive Director, C.N.Y.P.C.*, **DR. TERRI MAXYMILLIAN**, *Director S.O.T.P., C.N.Y.P.C.*, **CHARMINE BILL**, *Treatment Team Leader Ward 304*, **JEFF NOWICKI**, *Chief Mental Health TRM, Serv*,

                        Defendants.

**APPEARANCES:**                                     **OF COUNSEL:**

**DERRICK BROOKS**,
#172543
Plaintiff, *Pro se*
Central New York Psychiatric Facility
P.O. Box 300
Marcy, NY 13403

**HON. ERIC T. SCHNEIDERMAN**             **DOUGLAS J. GOGLIA, ESQ.**
Attorney General of the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

# REPORT-RECOMMENDATION and ORDER

Plaintiff Derrick Brooks brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging violations of his Fourth and Fourteenth Amendment rights as a result of a strip search conducted by Defendants, employees of Central New York Psychiatric Center (CNYPC), where Plaintiff was involuntarily civilly committed. *See* Dkt. No. 31, Am. Compl. Defendants now move for Summary

Judgment on the grounds that the search was consensual, and even if it was not, that the search was not unreasonable, and/or Defendants are entitled to qualified immunity. *See* Dkt. No. 60. Plaintiff opposes the Motion claiming the search was not consensual, Defendants lacked probable cause, and Defendants are not entitled to qualified immunity. *See* Dkt. No. 65. For the reasons stated below we recommend that the Defendants' Motion be **GRANTED.**

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion

for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

### B. Summary of Material Facts

Except where noted, the following facts are uncontested.

At all times relevant to the Complaint, Plaintiff was involuntarily committed to the Sex

Offender Treatment Program (SOTP) at CNYPC, where he was "detained [as a] sex offender requiring civil management pursuant to Article 10 of the New York Mental Hygeine Law." Dkt. No. 60-2, Defs.' Statement of Material Facts (hereinafter "Defs.' 7.1 Statement") at ¶¶ 1–4.[1] While at CNYPC, Plaintiff was housed in Unit 304, a "self-contained residential and treatment Unit designed to house and treat residents . . . [requiring] more containment and observation." *Id.* at ¶¶ 4–5. Unit 304 "was a secure unit within the larger secure environment and residents not living on the unit did not have access to it." Dkt. No. 60-3, Dr. Terri Maxymillian, Psy.D., Decl., dated Aug. 15, 2012, at ¶ 11. On February 3, 2009 while Plaintiff and other Unit 304 residents were eating lunch in the Unit's dining room, two rolled cigarettes containing marijuana were found on the floor outside of the Unit's day room. Defs.' 7.1 Statement at ¶¶ 6 & 7.

Thereafter, at approximately 12:30 p.m., Defendants Dr. Terri Maxymillion, the Director of Treatment Services for the SOTP at CNYPC, and Charmine Bill, the Treatment Team Leader, went to the Unit's dining room and alerted the residents that a controlled substance had been found within the Unit. *Id.* at ¶ 10. Defendants claim that they asked the patients to submit to the search and that Plaintiff and several other residents immediately consented. *Id.* at ¶¶ 11 & 13–14. Plaintiff avers that although he ultimately consented to the search, he did so only because the Defendants had ordered the residents to comply and threatened that those inmates who failed to do so would be forcibly searched by the police[2] and have their parole violated. Am. Compl. at ¶ 7(C).

---

[1] The Court notes that Plaintiff did not provide a proper response to the Defendants' 7.1 Statement. However, given his *pro se* status, we have liberally construed his Response to include any supported factual disputes which Plaintiff may have raised therein.

[2] In his Amended Complaint Plaintiff states that Defendants threatened to call the New York State Police, Compl. at ¶ 7(C), however, in his Opposition, Plaintiff asserts that Defendants threatened to call the "facility police," Pl.'s Opp'n at ¶ 4.

Sometime before 3:00 p.m., Plaintiff was brought into a room adjacent to the dining room and subjected to a body search by two male staff members. Defs.' 7.1 Statement at ¶ 19; Pl.'s Opp'n at ¶ 5(B). No contraband was found on Plaintiff's person. Defs.' 7.1 Statement at ¶ 20. A body search is defined by CNYPC's internal policy as "a search in which a resident disrobes under direct observation." Maxymillian Decl., Ex. A at p. OMH 9, Contraband Searches Policy (docketed as Dkt. No. 60-4). The body searches conducted on February 3 were approved by Defendant Dr. Donald Sawyer, the Executive Director of CNYPC. Am. Compl. at ¶ 7(C).

### C. Fourth Amendment

To establish a claim pursuant to 42 U.S.C. § 1983, a plaintiff must show "(1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state . . . law." *Velez v. Levy*, 401 F .3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (internal quotations omitted, alterations in original)). Members of the staff of a state run psychiatric center, are "government actors subject to the strictures of the Fourth Amendment." *Groves v. State of New York*, 2010 WL 1257858, at *5 (N.D.N.Y. Mar. 1, 2010) (citing *New Jersey v. T.L.O.*, 469 U.S. 325, 335 (1985)).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. Amend. IV. "The purpose of the fourth amendment [] is to protect people from arbitrary and oppressive governmental conduct." *Aiken v. Nixon*, 236 F. Supp. 2d 211, 230 (N.D.N.Y. Sept. 30, 2002). Ordinarily, a warrant secured from an independent magistrate and based on probable cause would be required in order for a government agent to conduct a strip search of a person's body. *Id.* at 230 (citing *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 619 (1989)). However, "government

officials do not need a warrant or probable cause to conduct a search when 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.'" *Id.* at 230-31 (quoting *Griffin v. Wisconsin,* 483 U.S. 868, 873 (1987) (other citations omitted)). A warrantless search is permissible in a "special needs" case provided that the search is "divorced from the State's general interest in law enforcement," and that it is "reasonable under the circumstances." *Id.* at 231 (quoting *Ferguson v. City of Charelston*, 532 U.S. 67, 79 (2001) (other citations omitted)).

Notwithstanding the fact that Plaintiff alleges Defendants threatened to call the police if Plaintiff did not submit to a search, there is no indication here that the search was wed to the State's general interest in law enforcement. Rather, the overriding purpose behind the search was to protect the welfare of the patients and staff at CNYPC. Thus, we are satisfied that the instant case presented the type of "special needs" situation where a warrantless search could be constitutionally permissible so long as it was reasonable under the circumstances. *Aiken v. Nixon*, 236 F. Supp. 2d at 231.

Whether a special needs search is reasonable is a context specific inquiry that must balance the "the intrusion on an individual's privacy interest against the search's promotion of legitimate governmental interests." *Id.* (internal quotations and citations omitted); *see also Ahlers v. Rabinowitz*, 684 F.3d 53, 61 (2d Cir.) *cert. denied*, 133 S. Ct. 466 (2012) (applying, for the first time, this balancing test to determine the contours of an involuntarily civilly committed person's Fourth Amendment right to be free from unreasonable searches and seizures).

Persons who are involuntarily civilly committed to psychiatric facilities do not have an expectation of privacy equal to free citizens, however, "they do not check their constitutional rights at the door." *Groves v. State of New York*, 2010 WL 1257858, at *5 (N.D.N.Y. Mar. 1, 2010)

(citations omitted). Indeed, "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Ahlers v. Rabinowitz*, 684 F.3d at 61 (quoting *Youngberg v. Romeo*, 457 U.S. 307, 321–22 (1982)). Succinctly stated, the "diminished expectation of privacy of [a civilly committed person] is what society is prepared to recognize as reasonable given the societal interest in protecting the health, safety, and welfare of the patients and staff of [psychiatric] units who would be detrimentally affected without sufficient precautionary measures." *Aiken v. Nixon*, 236 F. Supp. 2d at 232.[3]

The Supreme Court has instructed us that in balancing these competing interests, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979) (citations omitted). A state psychiatric facility has a "legitimate and significant interest in curbing the infiltration of drugs . . . into [ ] psychiatric units." *Aiken v. Nixon*, 236 F. Supp. 2d at 233.

In the instant case, Plaintiff was strip searched by CNYPC staff after they found "two rolled cigarrettes" that they believed to be marijuana in an area of the facility which could only be accessed by Unit 304 residents (including Plaintiff) and CNYPC staff. *See* Maxymillion Decl. at ¶¶ 9–12. While this evidence is not particularized enough to constitute sufficient probable cause to justify a warrantless strip search of a free citizen in a public place or private residence, such a high level of individualized suspicion is not required when the search at issue involves an involuntarily civilly

---

[3] We note that *Aiken v. Nixon*, dealt with the Fourth Amendment rights of a voluntarily committed person; however, given the Second Circuit's adoption of the balancing test in *Ahers v. Rabinowitz*, the principle is equally applicable to involuntarily committed patients as well.

committed resident within a state run psychiatric center. Rather, given the limited expectation of privacy, such a search is justified without a warrant where officials have a "reasonable suspicion" that legitimate state interests are in jeopardy. *See Aiken v. Nixon*, 236 F. Supp. 2d at 233–34 (collecting cases to support the proposition that "when balancing the diminished expectation of privacy of [civilly committed] individuals against the legitimate penological interest of the Government, a reasonable suspicion standard controls both strip searches and body cavity searches.").

CNYPC had a reasonable suspicion that a resident in a restricted unit was in possession of a controlled substance. It also had a non-law enforcement interest in preventing drugs from being introduced into such a setting. Nothing on the record, nor any fact or issue raised by the Plaintiff, raises a triable issue of material fact to suggest that it was unreasonable for CNYPC staff to suspect that the contraband originated from one of the limited number of residents who had access to the area where the contraband was found.

Plaintiff's arguments that CNYPC's suspicion was unfounded based on the fact that no contraband was found on his person after the search was completed, or that the contraband could just as easily have been the property of one of the many CNYPC staff members that also had access to Unit 304 are unpersuasive. *See generally* Pl.'s Opp'n. It is axiomatic that the reasonableness of a government agent's suspicion prior to a search can only be based on the knowledge available to that agent prior to the search. The fact that after the search it became clear that Plaintiff did not possess any marijuana does not affect the reasonableness of CNYPC's suspicion prior to the search. *See* Maxymillion Decl. at ¶¶ 12 & 13. Additionally, the fact that the marijuana could have belonged to a member of CNYPC's staff does not vitiate the alternate and equally probable possibility that

the marijuana may have belonged to one of the Unit 304 residents. Lastly, although a legitimate issue of fact exists regarding whether or not Plaintiff freely gave his consent to be searched or whether it was obtained through duress, the issue is immaterial. *See* Am. Compl. at ¶ 7(C). As established above, in this case, the search would have been justified even in the absence of consent.

Thus, given CNYPC's staff's legitimate, non-law enforcement interest in preventing controlled substances from entering a controlled unit within a psychiatric facility, the intrusion upon the limited privacy rights of a civilly committed person were clearly justified. *See Ahlers v. Rabinowitzi,* 684 F.3d at 62 (finding state's interest in seizing contraband from civilly committed psychiatric patient outweighed patient's privacy interest justifying random, warrantless searches); *see also Aiken v. Nixon*, 236 F. Supp. 2d at 233–35 (finding that use of body-cavity searches to protect a legitimate government interest in curtailing the flow of contraband into a state psychiatric facility outweighed the limited expectations of privacy of a voluntarily committed patient). For these reasons we recommend that Defendants' Motion for Summary Judgment be **GRANTED.**

### D. Qualified Immunity

Because we have found that no genuine issue of material fact has been raised suggesting that the search in this case was unreasonable, nor any other evidence that Plaintiff's civil rights were violated, we need not, and do not, discuss qualified immunity.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 60) be **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and

Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: January 31, 2013
       Albany, New York

_____
Randolph F. Treece
U.S. Magistrate Judge